IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |  |
|---|---|---|---|
| MARK WALTERS, | | § | |
| | Plaintiff, | § | |
| v. | | § | No. CIV-23-532-PRW |
| DR. SPENCER ZEAVIN, M.D. & FEDERAL BUREAU OF PRISONS | | § | |
| | Defendants. | § | |
| | | § | |

COMPLAINT

**FILED**

JUN 14 2023

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____ _____,DEPUTY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, Mark Walters, in the above styled and numbered action files this Complaint pursuant to Federal Rule of Civil Procedure 3. In support thereof, Plaintiff respectfully shows this Honorable Court as follows:

I.    PARTIES

1. Plaintiff, MARK WALTERS, #30934-004, is in the custody of the Federal Bureau of Prisons, and files this action in his individual capacity. Plaintiff's address is: Federal Correctional Institution, P.O. Box 1500, El Reno, Oklahoma 73036.

2. Defendant, DR. SPENCER ZEAVIN, M.D., is the Clinical Director of the Federal Correctional Institution at El Reno. He is sued in his individual capacity pursuant to Federal Rule of Civil Procedure 4(c)(3). Service of summons along with a copy of the Complaint should be made "by a Marshal or Someone specially appointed" at the Federal Correctional Institution - El Reno, 4205 W. U.S. Highway 66, El Reno, Oklahoma 73036.

3. Defendant, FEDERAL BUREAU OF PRISONS, is an agency of the United States government. Pursuant to Federal Rule of Civil Procedure 4(i)(1)(A), service of summons along with a copy of the Complaint may be made by deliver-

1.

ing a copy of such to the "United States attorney for the [Western District of Oklahoma] - or to an assistant United States attorney whom the United States attorney designates."

## II.   VENUE & JURISDICTION

4.   Venue is proper in the United States District Court for the Western District of Oklahoma, as a substantial part of the events or omissions giving rise to the claims alleged herein have occurred in this Judicial District.

5.   This Court has jurisdiction to hear this action pursuant to 42 U.S.C. § 1983, which allows "every person, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party innured in an action at law, suit in equity, or other proper proceeding for redress ..." Plaintiff alleges herein that Defendants are deliberately indifferent to his medical care in violation of the Eight Amendment of the U.S. Constitution, and that he is being denied Equal Rights under the Fourteenth Amendment of the U.S. Constitution.

## III.   FACTS

6.   In the spring of 2017, Plaintiff went to see his general practicioner, Emily Goble, nurse practitioner, due to feeling fatigued, tired, lethargic, depressed, and experiencing night sweats. Ms. Goble ordered a standard blood panel test that included checking Plaintiff's testosterone levels.

7.   The blood test revealed that Plaintiff, a healthy and athletic 46 year old, had a testosterone level of 229 ng/dl. According to the Journal of Clinical Endocrinology and Metabolism, this is the testosterone level of an 80 year old man.

2.

8.  Plaintiff was referred to Dr. Charles Osterberg, M.D., a urologist at the Seton Family of Doctors in Austin, Texas.

9.  Dr. Osterberg diagnosed Plaintiff with hypogonadotropic hypognadism, which is a shrinking of the testicles that then limit the bodies ability to naturally produce testosterone, and was most likely caused by Plaintiff's high-volume endurance training when he was running competitive marathons and Ironman triathlons.

10.  Dr. Osterberg placed Plaintiff on IM testosterone injections - hormone replacement - where Plaintiff would inject himself every week with 1 mL of testosterone cypionate 200 mg/mL intramuscluar oil.  Within 4 months Plaintiff was no longer fatigued, depressed, lethargic, or experiencing night sweats.

11.  Between 2017 and 2020, Plaintiff regularly was examined by Dr. Osterberg, and periodic blood tests were conducted to measure his testosterone levels, which registered in the 650 ng/mL  range.

12.  In March of 2021 Plaintiff was arrested while hiking in Big Bend National Park in west Texas for the unlawful possession of a firearm.  He was sentenced to a term of 71 months imprisonment.  Between March, 2021, and August 2022, Plaintiff was detained and housed by the U.S. Marshals at the West Texas Detention Facility in Sierra Blanca, Texas.

13.  The Marshals, who oversaw health care of Plaintiff while he was in detention, was made aware of Plaintiff's required need for testosterone therapy.  The Marshals approved for Plaintiff to be taken to El Paso and examined by Dr. Ifeoma Egbuonu, M.D., and endrocrinologist.  Dr. Egbuonu reviewed Plaintiff's medical records from Dr. Osterberg, and conducted her own blood test, and determined that Plaintiff was a candidate to continue to receive testosterone treatment.  It had taken approximately four months for the Marshals to approve the appointment, and this lapse in time between Plaintiff's

3.

injections, caused his testosterone levels to plummet to 297 ng/dL.  According to the Journal of Clinical Endocrinology and Metabolism, this ranks Plaintiff in the 20th percentile for men in the 50-59 age bracket.

14.  Plaintiff remained on the testosterone regimen until the day before he arrived at the Federal Bureau of Prisons, El Reno facility.  Upon arrival on October 21, 2022, Plaintiff informed nurse Kroll that he is required to take testosterone injections due to chronic hypogonadism.  Ms. Kroll ordered blood labs that included testing Plaintiff's testosterone levels.  The results showed that Plaintiff's testosterone level was at 309 ng/dL, which according to the Bureau of Prisons, is considered low.

15.  On or about November 2, 2022, Plaintiff met with Defendant Zeavin, and informed him that he requires testosterone replacement therapy due to a chronic condition.  Plaintiff presented his medical records to Defendant Zeavin to identify the two doctors - Osterberg and Egbuonu - who have previously treated Plaintiff for hypogonadism.

16.  Dr. Zeavin informed Plaintiff that he does not prescribe testosterone.

17.  Dr. Zeavin refused to go over Plaintiff's blood panel test that was performed by the Bureau when he arrived at the El Reno facility.

18.  Plaintiff filed for Administrative Remedies by submitting his BP-8, which Plaintiff's requested relief to start treatment being denied.

19.  On January 11, 2023, Plaintiff submitted his Administrative Remedy to the El Reno Warden, and received a response on January 25th.  The response states that "a review of your medical records determined you requested injections of a non-formulary medication during intake screening.  Following Health Services evaluation, you failed to meet the criteria due to no 6-month wash out period. "  This Remedy was denied.

20.  A wash out is, as Plaintiff understands it, as a period of 6-months with no injections and then another blood test to determine Plaintiff's baseline

4.

testosterone levels.

21. Plaintiff waited 6-months and was examined by Defendant Zeavin on or about May 18, 2023. During this examination Plaintiff informed Defendant that it had been 6-months since his blood test to determine his testoterone levels and that Plaintiff was due for another test to determine if he qualifies for testosterone replacement therapy. Plaintifff brought with him his Administrative Remedies BP-9, 10, and 11, along with his medical records from Dr.'s Osterberg and Egbuonu.

22. Defendant Zeavin put his hand in the air and said "that we are not going to discuss testosterone." Defendant further informed Plaintiff that he does not prescribe testosterone.

23. Plaintiff left the examination room dejected, and feeling hopeless.

24. This May 18, 2023 exam by Defendant Zeavin occurred more than 7 months since Plaintiff's last testosterone injection. Plaintiff is feeling extremely fatigued, tired, lethargic, depressed, and is experiencing night sweats to the point that he has to hand wash his bed sheets each morning. Plaintiff is exhausted to the point where he takes 1 to 2 hour naps during the mornings and afternoons. He has no desire to exercise, and this challenges Plaintiff due to his prior life as an endurance athlete. Plaintiff has gained weight, he has a hard time formulating sentences and thought patterns are erratic. These are all symptoms of the chronically low testesterone that Plaintiff first experienced back in 2017 when he first sought treatment for these exact symptoms.

IV.
COUNT 1
VIOLATION OF EIGHTH AMENDMENT

25. Plaintiff incorporates by reference paragraphs 1 through 24 as if each paragraph is printed herein.

26. Plaintiff alleges that Defendant, Dr. Spencer Zeavin, M.D., the Clinical Director at the Federal Correctional Institution is deliberately indifferent to

5.

Plaintiff's serious medical needs by failing to treat his hypogonadotropic hypogonadism.

27.  Plaintiff is in custody of the Federal Bureau of Prisons, and Defendant, the Clinical Director licensed to prescribe medications, is intentionally interfering and denying treatment once prescibed.

28. Plaintiff's hypogonadism has been treated by two other physicians since 2017, and detained for the federal crime that he was alleged to have committed, the U.S. Marshals, who contract with a private healthcare provider to assess medical treatment for federal pre-trial detainees, approved of continuing Plaintiff's treatment based on the sound medical advise of Dr. Egbuonu.

29.  Defendant has refused to follow the Clinical Practices Guidelines of the Bureau of Prisons by refusing to test Plaintiff's testosterone levels following a 6 month washout period.

30.  It is cruel and unsual punishment for Defendant to cause Plaintiff to be fatigued to the point where a once healthy and robust 50 year man spent 5 months hiking the National Parks in the western half of the country prior to his arrest while he was regularly taking his injections, to now sleeping the majority of day, feeling like he is in a cloud, unable to think, and then suffering from horrible night sweats that drench his sheets and pillow.

31.  Defendant has refused to even speak with Plaintiff about renewing the testosterone treatment, thus Defendant is taking unreasonable risks to abate further harm to Plaintiff.

32.  Defendant, Dr. Spencer Zeavin, M.D., has violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by intentionally denying Plaintiff medical care for a previously diagnosed severe medical condition.

## COUNT 2
### VIOLATION OF FOURTEENTH AMENDMENT

33. Plaintiff incorporates by reference paragraphs 1 through 32 as if each paragraph is printed herein.

34. Plaintiff alleges that Defendant, Federal Bureau of Prisons, has violated his Fourteenth Amendment right to Equal Protection by denying him, or otherwise mandating that Plaintiff wait at least 6 months prior to receiving treatment for hypogonadism.

35. Defendant, Bureau of Prisons, maintains Program Statement 5200.04, Dated January 18, 2017, that allows Health Services Division to provide hormone replacement therapy, including testosterone injections to transgender inmates.

36. Specifically, the policy states that "hormone or other medical treatment shall be provided after an individualized assessment of the requested inmate by institution medical staff. Medical staff should request consultation from Psychology Services regarding the mental health benefits of hormone or other necessary medical treatment."

37. Plaintiff is an inmate serving a federal sentence in the same capacity, under the same rules, and program statements of the Federal Bureau of Prisons, as is a trans-inmate. Plaintiff is similarly situated in this capacity as an inmate who is receiving hormone replacement therapy under Program Statement 5200.04, and he is not being treated alike.

38. Moreover, Plaintiff has reviewed the medical records of inmate Kirksey Nix, and Mr. Nix an 80 year old, is receiving testosterone treatment.

39. Plaintiff is being intentionally treated differently than other inmates. Plaintiff's depression, low energy, fatigue, lethargy, and night sweats are being caused by a Bureau policy that permits some inmates to receive treatment of hormone replacement, while denying Plaintiff.

7.

V.
DECLARATORY AND INJUNCTIVE RELIEF

40.  Plaintiff incorporates by reference paragraphs 1 through 39 as if each paragraph is printed herein.

41. Plaintiff has no plain, adequate, or complete remedy at law against Defendants.  Injunctive and Declaratory relief from this Honorable Court is the only relief that can adequately protect the rights of Plaintiff, and make him whole.

VI.    ADMINISTRATIVE REMEDIES

42.  Plaintiff incorporates paragraphs 1 through 41 as if each paragraph is printed herein.

43.  Plaintiff completed the Federal Bureau of Prisons Administrative Remedies process by first filing a BP-8 requesting an informal resolution by asking that Dr. Zeavin prescribe him testosterone.  This was denied.

44.  On January 11, 2023, the Warden's office at the Federal Correctional institution received Plaintiff's BP-9 asking to be placed on testosterone. The Warden's office responded on January 23rd. (Ex A)

45.  Plaintiff mailed his appeal of the Warden's denial of Plaintiff's BP-9 to the Bureau's South Central Regional Office, which was received on February 6th.  The Regional Office was required to respond on or before April 7th. (Ex A)

46.  Plaintiff never received a response from the South Central Regional Office by April 7th, and on April 13th, he mailed a BP-11 to the Central Administrative office in Washington, D.C. (Ex C)

47.  On May 19th, Plaintiff's Unit Counselor, Mr. Frazier, brought Plaintiff an envelope that contained the response to the BP-10 [Regional Appeal], and the return of his BP-11 [Central Office Appeal].

48.  The Regional Appeal was dated April 24th, two weeks after the April

8.

7th deadline that the Regional Appeal was due. (Ex D)

49. Also, the large envelope that Unit Counselor Frazier gave Plaintiff was the original BP-11 [Central Office Appeal], which stated that Plaintiff "did not provide a copy of your Regional Office Administrative Appeal..." and that Plaintiff may "resubmit your appeal in the proper form within 10 days of the date of this rejection notice." (Ex E)

50. The date of the "rejection notice" was May 2, 2023, and because Plaintiff did not receive the notice from his counselor until May 19th, he was unable to resubmit in the alotted time frame.

51. The Bureau of Prisons, by and through the acts and omissions of its employees, agents, and staff, intentionally interfered and hindered Plaintiff's ability to Exhaust his Administrative Remedies outlined under the Federal Regulation Codes.

52. For all purposes, this Court should consider that Plaintiff has exhausted his administrative remedies.

## VII.    REQUESTED RELIEF

Plaintiff respectfully asks this Honroable Court to GRANT him declaratory and injunctive relief, including but not limited the immediate treatment for hypogonadism; and any other relief that he may be so entitled to.

SIGNED on this 5th day of June, 2023.

Respectfully submitted,

Mark Walters

Mark Walters
#30934-004
c/o FCI
P.O. Box 1500
El Reno, OK 73036

Plaintiff Pro Se

9.